IN THE CIRCUIT COURT FOR BALTIMORE CITY

| | |
|---|---|
| CRAIG A. ROCKLIN<br>3903 North Charles St.<br>Baltimore, MD 21218<br><br>　　　　　　　Plaintiff,<br>　　　　v.<br>Robert Valihura<br>3704 Kennett Pike Suite 200<br>Greenville, DE 19807<br><br>and<br><br>Morton, Valihura & Zerbato, LLC<br>3704 Kennett Pike Suite 200<br>Greenville, DE 19807<br><br>　　　　　　　Defendant. | Case No.: C-24-CV-26-000479<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

This action arises from an intentional, attorney-driven debt-collection campaign orchestrated by Robert Valihura and his law firm, Morton, Valihura & Zerbato, LLC ("MVZ"), to convert a small condominium assessment delinquency into a litigation-fueled revenue stream. Valihura and MVZ did not merely pursue collection; they manufactured leverage—through inflated payoff figures, misapplied payments, layered interest, and relentless attorney-fee billing—so that each step of the "collection" process generated more fees for themselves than it recovered for the association.

At all times relevant, Valihura and MVZ acted as debt collectors within the meaning of the Fair Debt Collection Practices Act, and their conduct is actionable even when carried out through litigation and foreclosure-adjacent proceedings. See Heintz v. Jenkins; Karen Wilson v. Draper & Goldberg, P.L.L.C. L. Darren Goldberg. Valihura and MVZ repeatedly attempted to

collect amounts not authorized—including attorneys' fees and interest that were not properly recoverable—by representing grossly inflated balances as "amounts due" and using the threat of foreclosure and judicial process to coerce payment.

Despite Mr. Rocklin's good-faith payments in 2020 and his effort to stabilize the matter through a Chapter 13 bankruptcy filing, Valihura and MVZ escalated the financial pressure rather than resolve the debt. They issued payoff demands that bore no reasonable relationship to legitimate assessments and instead reflected fee-churning and compounding charges. By May 2023, Valihura and MVZ demanded nearly $28,000, a figure driven primarily by their own generated attorneys' fees and collection charges rather than any bona fide delinquency.

Accordingly, Mr. Rocklin brings this action to recover damages and statutory relief for the severe financial harm, coercive pressure, and litigation-driven fee inflation caused by Valihura and MVZ's unlawful debt-collection practices.

## PARTIES

1. Plaintiff Craig A. Rocklin ("Mr. Rocklin") is a natural person and a resident of the State of Maryland. At all times relevant to this Complaint, Mr. Rocklin was a consumer who was subjected to aggressive debt collection practices and excessive legal fees over minor HOA assessments.

2. Defendant Morton, Valihura & Zerbato, LLC ("MVZ") is a limited liability company organized and existing under the laws of the State of Delaware. MVZ is a law firm acting as a debt collector.

3. Robert Valihura is a Delaware attorney who routinely engages in collection activities in Maryland. *See Brown v. Bethany Bay Homeowners Ass'n, Inc.*, No. CV RDB-23-1573,

2024 WL 1243822, at *3 (D. Md. Mar. 22, 2024)("Under these circumstances, it would not be constitutionally unreasonable to exercise jurisdiction over Valihura and MVZ, especially considering that MVZ "routinely practices" in Maryland. (ECF No. 16-2 at 1.) Therefore, these circumstances satisfy the three-prong test set forth in *Consulting Engineers*. Accordingly, Valihura and MVZ's motion to dismiss for lack of personal jurisdiction is DENIED").

## JURISDICTION AND VENUE

6. Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1): This Court has personal jurisdiction over all Defendants, including the Delaware-based legal counsel, because they transacted business in Maryland.

7. U.S. Const. amend. XIV (Due Process Clause): Exercising jurisdiction comports with due process because the Defendants purposefully availed themselves of the privilege of conducting activities in Maryland. By directing collection efforts at a Maryland resident regarding Maryland real property, the Delaware Defendants created sufficient minimum contacts with the forum such that they could reasonably anticipate being haled into court here.

## FACTUAL BACKGROUND

**Defendants Weaponized Routine Assessments, Transforming Modest Monthly Charges into an Insurmountable Debt Spiral**

12. Plaintiff Craig A. Rocklin ("Mr. Rocklin") is a Maryland resident and a natural person.

13. Mr. Rocklin owns Unit 8 at 37249 Martin Street, Rehoboth Beach, Delaware (the "Unit"), which is subject to condominium assessments and related charges imposed by Rehoboth Beach Gardens Condominium Association of Owners, Inc. (the "Association").

14. The Association's assessments for the Unit included recurring monthly amounts of approximately $214.00 (assessment) and $176.00 (capital reserve), for an approximate monthly total of $390.00.

15. Delinquent condominium assessments for an owner-occupied residential unit are a consumer obligation incurred primarily for personal, family, or household purposes.

16. Defendant Robert J. Valihura, Jr. ("Valihura") is an attorney who, through his law practice, regularly engaged in collection activity directed to Mr. Rocklin in Maryland concerning the alleged delinquency on the Unit.

17. Valihura and his firm sent written collection communications that expressly stated they were attempting to collect a debt and provided dispute/validation language associated with consumer-debt collection communications.

### Defendants Weaponized Routine Assessments, Transforming Modest Monthly Charges into an Insurmountable Debt Spiral

18. The underlying debt in this matter originated from modest, recurring monthly charges totaling a mere $390.00, comprised of a $214.00 assessment and a $176.00 capital reserve contribution. Rather than managing these small sums responsibly, Defendants aggressively inflated the balance through the frequent imposition of late fees and a punitive 18% interest rate on unpaid balances. Throughout 2020, the RBG HOA ledger reflects specific, rapidly accumulating legal fee entries—such as charges for $363.88, $329.00, and $384.80—that served no purpose other than to accelerate the debt balance to over $9,500.00 by July 2020. These fees were assessed to Plaintiff's account despite the fact that no lawsuit had been commenced at that time.

4

19. On or about May 6, 2020, the Association recorded a Notice and Statement of Lien asserting a "principal amount" of $7,370.04 due as of April 20, 2020.

20. On May 6, 2020, Defendants filed a lawsuit on behalf of their HOA client against the Plaintiff for $7,140.04. Soon after, on July 7, 2020, Plaintiff paid the HOA $1,520. Notwithstanding that July 7, 2020 payment, on July 28, 2020, Valihura signed and filed a sworn "Statement of Plaintiff in Support of Default Judgment" claiming $7,140.04 as the amount of money claimed due.

21. On August 5, 2020, a default judgment entered in the Delaware Justice of the Peace Court reflecting:

    $7,140.04 "Judgment Amount";

    $55.00 court costs;

    $292.25 pre-judgment interest; and

    $815.55 attorneys' fees.

    The Association later transferred the matter to the Delaware Superior Court and pursued execution without making any adjustments for double-billing or the $1,520 that Plaintiff paid on July 7, 2020.

22. On or about September 9, 2020, execution documents filed in Delaware Superior Court sought an "accrued amount" of $8,942.31 and included a line item for attorneys' fees stated as $1,199.05—an attorneys' fee figure different from the default judgment's $815.55 attorneys' fee line.

23. In a clear demonstration of his intent to resolve the matter, Mr. Rocklin made good-faith lump sum payments totaling $7,152.84 in October. These payments successfully reduced

5

the actual assessment balance to approximately $1,384.68. Despite these substantial payments, MVZ immediately issued a payoff statement in October 2020 demanding an additional $5,394.99. This demand was composed almost entirely of manufactured costs, including $3,200.15 in attorney's fees, $153.00 in costs to cancel a Sheriff's sale, and various interest charges.

24. As the Plaintiff attempted to reconcile his account with the HOA through the Defendants' law office, the Defendants continued to bill legal fees for almost every interaction, making it impossible for Plaintiff to actually catch up and satisfy the debt. Furthermore, the debt was infected with double-billed legal fees – and as the Plaintiff attempted to resolve these issues that were caused by the Defendants, the Defendants continued to charge legal fees on the Plaintiff's account.

25. Defendants utilized the imminent threat of a Sheriff's sale in Delaware Superior Court (Case No. S20J-08-110) not as a tool for justice, but as a cudgel to coerce payment of these inflated fees. By leveraging the threat of foreclosure, Defendants sought to force Mr. Rocklin to pay amounts that had little relation to the actual cost of maintaining the community.

26. Defendants' unlawful debt collection practices included the practice of adding additional legal fees to the judgment balance that were not included in the judgment or added to the judgment with any filed amendments.

27. Defendant Valihura, a sworn officer of the Court, filed papers and sworn affidavits to the Delaware court that he knew, or should have known, were false. For instance, on July 28, 2020, Valihura signed a "Statement of Plaintiff in Support of Default Judgment" under the penalty of perjury that claimed $7,140.04 was due to the association, when Valihura

knew that figure included the $1,520 that Plaintiffs paid the association $1,520 on July 7, 2020. Valihura continued to sign and file papers into the Delaware Court and the United States Bankruptcy Court based on this improper accounting, which infected the Plaintiff's account with the HOA and caused extensive further damage.

**Defendants Obstructed Payment and Escalated Legal Billings During Plaintiff's Bankruptcy Protection Efforts**

28. On January 15, 2021, Mr. Rocklin filed for Chapter 13 bankruptcy in Maryland, seeking federal protection to save his home from Defendants' aggressive collection tactics. Immediately following this filing, Defendants posted significant legal fee invoices to the account in early 2021, including Invoice 22158 for $3,910.00 and Invoice 21175 for $1,151.50, signaling their intent to maximize billing despite the stay.

29. By May 18, 2021, Defendants issued an account statement showing a balance of $14,284.38. This statement explicitly noted that the account was 'blocked' and that office payments were refused, forcing all interaction through litigation counsel. This obstructionist tactic prevented Mr. Rocklin from making direct payments and ensured that *every* interaction would generate further billable hours for Valihura and MVZ.

30. During the pendency of the Chapter 13 case, the Bankruptcy Trustee distributed $2,793.99 to the RBG HOA, allocated as $1,044.28 in principal and $1,749.71 in interest. Despite the confirmed Chapter 13 plan and the receipt of these Trustee payments, Defendants continued to accrue legal fees against the unit. Defendants treated the bankruptcy process not as a debt resolution mechanism, but as a revenue-generating event, churning fees while Mr. Rocklin attempted to reorganize his finances.

31. On March 25, 2021, Valihura signed and filed a sworn Proof of Claim in Mr. Rocklin's Chapter 13 case asserting a secured claim of $14,660.38.

32. The Proof of Claim included an itemization asserting the $14,660.38 total was comprised of:

    "outstanding assessments and late fees" of $3,403.79;

    pre-judgment interest of $292.25;

    post-judgment interest of $113.58 calculated on $3,403.79 from August 5, 2020 through March 25, 2021;

    $230.00 "fee to satisfy" the recorded lien;

    $221.51 in "fees and expenses to satisfy" judgments; and

    $10,399.25 in attorney's fees, costs, and expenses through March 25, 2021.

33. Valihura's Proof of Claim was filed under penalty of perjury and included a representation that, in calculating the claim amount, the creditor gave the debtor credit for payments received.

34. On May 27, 2021, filings in the bankruptcy case sought allowance of the attorney's fees/costs/expenses through March 25, 2021 in the amount of $10,399.25, including attorneys' fees and "professional staff fees."

35. Those bankruptcy filings also asserted that the Unit was sold at a January 19, 2021 sheriff's sale and that creditor's counsel was not notified of the bankruptcy filing until January 20, 2021.

36. During the pendency of Mr. Rocklin's Chapter 13 case (filed January 15, 2021; dismissed November 8, 2022), the HOA's property-manager statements reflect multiple "Legal Fees" invoice postings attributed to collection counsel activity while the bankruptcy was pending, including (among others): Invoice 21702 for $817.80 dated 01/21/2021; and (dated 04/26/2021) Invoice 21175 for $1,151.50, Invoice 22745 for $118.50, Invoice 22158 for

8

$3,910.00, and Invoice 23298 for $857.00. These ledger postings alone total $6,854.80 in postpetition "legal fee" charges reflected on the HOA side during the bankruptcy period.

37. That undisclosed postpetition fee accrual is problematic in at least three ways. First, in a Chapter 13 case, the debtor, trustee, and court administer creditor entitlements through the bankruptcy process—i.e., via the plan and claims administration—so postpetition "add-ons" that are not disclosed in the bankruptcy record undermine transparent administration and materially impede the debtor's ability to evaluate, contest, or cure the alleged default through the plan framework and trustee disbursements. See generally 11 U.S.C. §§ 1322, 1326. Second, postpetition fee demands (or using undisclosed fees as leverage in payoff demands, foreclosure pressure, or account "blocking") risk functioning as an end-run around the Chapter 13 process, especially where the creditor is simultaneously telling the debtor that payments will not be accepted except through counsel while fees keep increasing. Third, to the extent these postpetition fees were used as part of an act to collect or pressure payment on a prepetition debt outside the bankruptcy process while the stay was in effect (including by increasing payoff demands, conditioning relief on immediate payment, or continuing foreclosure mechanics without appropriate bankruptcy-court disclosure), that conduct potentially implicates the automatic stay regime. See 11 U.S.C. § 362.

**Defendants' Predatory Collection Culminated in a Deceptive Demand for Over $27,000, Composed Primarily of Manufactured Legal Fees**

38. Following the dismissal of the Chapter 13 case, MVZ sent a letter dated May 2, 2023, to the RBG HOA President, which served as the basis for renewed collection efforts against

9

Mr. Rocklin. While the May 2023 letter acknowledged receipt of the $2,793.99 in Trustee payments, it nevertheless demanded a shocking total payoff of **$27,820.48.**

39. This demand included a staggering $9,980.03 in *new* attorney's fees incurred just between March 25, 2021, and May 1, 2023. Furthermore, the demand included $5,598.30 in assessments and fees for the period covering the bankruptcy, plus post-judgment interest. The total amount attributed to attorney fees and collection charges over the life of the dispute reached approximately $25,000.00—a sum grossly disproportionate to the underlying monthly assessment of $390.00.

40. Defendants' debt collection practices soared beyond any activity that it could argue was on behalf of its HOA clients, when the Defendants demanded $26,170.12 from the Plaintiff while the HOA's was representing that the Plaintiff's account with them was fully satisfied.

41. This final demand constitutes a materially misleading representation and an unfair practice. It attempts to collect unauthorized and excessive fees churned through unnecessary litigation, causing substantial injury to Mr. Rocklin that far exceeds the value of the original debt.

### COUNT I – MARYLAND CONSUMER DEBT COLLECTION ACT ("MCDCA")

42. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

43. Defendants are "collectors" as defined under Maryland law.

44. Defendants violated the MCDCA, including CL § 14-202(8), by claiming, attempting, and/or threatening to enforce a right with knowledge that the right did not exist, including by attempting to collect attorneys' fees, costs, and interest amounts that Defendants were

not legally entitled to collect and by treating those amounts as part of a lawfully due payoff balance.

45. Defendants acted with the required mental state because, among other things:

    a) Defendants possessed (or had access to) account statements, payment records, and ledger entries demonstrating the discrepancy between lawful assessments and the inflated payoff figures;

    b) Defendants repeatedly demanded and pursued payment of amounts dominated by attorneys' fees and collection charges untethered to lawful entitlement;

    c) Defendants persisted in demanding inflated amounts despite notice and documentary proof that payments were made and that amounts were overstated.

46. Additionally, Defendants' conduct violated the FDCPA, and the MCDCA also prohibits conduct that violates specified FDCPA provisions.

47. The assessments, late fees, interest, attorneys' fees, costs, and other collection charges Defendants sought to collect arise from Plaintiff's residential condominium ownership and constitute a consumer debt.

48. Defendants Robert J. Valihura, Jr. and Morton, Valihura & Zerbato, LLC are "debt collectors" within the meaning of the FDCPA because they regularly collect or attempt to collect consumer debts owed or allegedly owed to another, including through litigation and related judgment-enforcement activity.

49. Defendants' litigation filings, payoff demands, and other enforcement-adjacent conduct constitute debt collection activity and are not immunized from MCDCA and FDCPA scrutiny merely because they occur in or around litigation.

50. Defendants violated the FDCPA by using false, deceptive, or misleading representations and means in connection with the collection of the alleged debt, including by misrepresenting the character, amount, and/or legal status of the sums claimed due. See 15 U.S.C. §§ 1692–1692p.

51. Defendants violated the FDCPA by presenting payoff figures and amounts claimed due that included attorneys' fees, costs, and interest components that were not lawfully collectible as demanded and/or were presented in a misleading manner as fixed, presently due obligations.

52. Defendants violated the FDCPA by attempting to collect amounts not expressly authorized by agreement or permitted by law, including attorneys' fees and collection charges that Defendants treated as due and payable as part of inflated payoff amounts.

53. Defendants' misrepresentations and omissions regarding amounts owed and credits for payments were material because they could objectively affect the decision-making of the least sophisticated consumer concerning whether and how to dispute, pay, seek counsel, or respond to collection pressure.

54. As a direct and proximate result of Defendants' MCDCA violations, Plaintiff suffered damages, including financial loss and emotional distress, for which Defendants are liable.

55. WHEREFORE, Plaintiff demands judgment in an amount in excess of $75,000 against Defendants for all damages proximately caused by the MCDCA violations, together with such other relief as permitted by law, including nominal damages, damages for emotional distress with physical manifestations, and attorney's fees.

**COUNT II – MARYLAND CONSUMER PROTECTION ACT ("MCPA")**

56. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

57. Defendants' collection activities constitute the collection of consumer debts and are subject to the MCPA's prohibition on unfair or deceptive trade practices. Md. Code Ann., Com. Law §§ 13-301, 13-303, 13-408.

58. Defendants engaged in unfair or deceptive trade practices by, among other things, making materially misleading statements and omissions regarding the amount lawfully due, including attorneys' fees, costs, and interest, and by using deceptive payoff demands and collection communications to pressure Plaintiff to pay inflated sums.

59. A violation of the MCDCA constitutes a per se violation of the MCPA as an unfair, abusive, or deceptive trade practice.

60. To the extent Defendants contend their conduct is exempt as "professional services," that exemption does not provide a blanket shield for debt-collection conduct by lawyers and law firms in the HOA debt-collection context, particularly where the conduct is actionable under consumer-debt statutes. Furthermore, this Court has already determined that the professional services exemption does not apply to Valihura and MVZ in these circumstances. *Brown v. Bethany Bay Homeowners Ass'n, Inc.,* No. CV RDB-23-1573, 2024 WL 1243822, at *4 (D. Md. Mar. 22, 2024)("Plaintiffs bring this suit under both the MCPA and the MCDCA to challenge Valihura and MVZ's debt collection activity. The professional services exemption therefore does not apply in this instance.")

61. As a direct and proximate result of Defendants' unfair and deceptive trade practices, Plaintiff suffered actual injury and loss, and Plaintiff is entitled to recover damages and reasonable attorneys' fees.

62. WHEREFORE, Plaintiff demands judgment in an amount in excess of $75,000 against Defendants for actual damages including emotional distress (i.e. anxiety and loss of

sleep), attorneys' fees, and costs as authorized by the MCPA. Md. Code Ann., Com. Law §§ 13-301, 13-303, 13-408.

### COUNT III – FRAUD (MARYLAND COMMON LAW)

63. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

64. Defendants made false representations of material fact to Plaintiff and to third parties in a manner intended to be relied upon in the collection and enforcement of the alleged debt, including but not limited to false and misleading representations concerning the amount due, the inclusion and characterization of attorneys' fees and costs as lawfully collectible, the application of payments, and the interest and fee components allegedly owed.

65. Defendants knew the representations were false or acted with reckless indifference to their truth because Defendants possessed, controlled, or had ready access to the underlying account ledgers, payment histories, payoff calculations, and related documents that contradicted the inflated sums demanded.

66. Defendants intended to deceive Plaintiff and to induce Plaintiff (and, where applicable, courts and bankruptcy stakeholders) to act in reliance on Defendants' representations, including by paying inflated sums, foregoing defenses, and submitting to collection pressure under threat of foreclosure or other judicial process.

67. Plaintiff justifiably relied on Defendants' misrepresentations to his detriment, including by expending funds and incurring costs to respond to and mitigate Defendants' collection actions and threats.

68. As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff suffered damages, including financial losses and consequential harms.

69. WHEREFORE, Plaintiff demands judgment in an amount in excess of $75,000 against Defendants for actual and compensatory damages, punitive damages, attorney's fees, and such other relief as the Court deems just and proper.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

/s/ Ingmar Goldson
Ingmar Goldson, Esq.
Bar # 1212110336

## NOTICE OF CLAIM FOR ATTORRNEY'S FEES

Plaintiff hereby gives notice that he seeks attorney's fees in this case, and that these fees could be substantial as the case progresses.

Respectfully submitted,

/s/ Ingmar Goldson
Ingmar Goldson, Esq.
Bar # 1212110336
The Goldson Law Office
1 Research Court, Suite 450
Rockville, MD 20850
Phone: 240-780-8829
igoldson@goldsonlawoffice.com

Attorney for Plaintiff